CASE No. 12-17738

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————

## NML CAPITAL, LTD.,

*Plaintiff-Appellee,*

v.

## THE REPUBLIC OF ARGENTINA,

*Defendant-Appellant.*

———————

On Appeal From The United States District Court
For The Northern District of California
District Court Case 3:12-mc-80185-JSW
Hon. Jeffrey S. White, District Judge
Hon. Maria-Elena James, Magistrate Judge

———————

## FIRST BRIEF OF DEFENDANT-APPELLANT
## THE REPUBLIC OF ARGENTINA

———————

| | |
|---|---|
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>A Limited Liability Partnership<br>Including Professional Corporations<br>Neil A.F. Popović, Cal. Bar No. 132403<br>Martin D. White, Cal. Bar No. 253476<br>Four Embarcadero Center, 17th Floor<br>San Francisco, California  94111-4109<br>Telephone:  (415) 434-9100 | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>Jonathan I. Blackman<br>Carmine D. Boccuzzi<br>Sara A. Sanchez<br>Michael M. Brennan<br>One Liberty Plaza<br>New York, NY 10006<br>Telephone:  (212) 225-2000 |

*Attorneys for Defendant-Appellant*
*THE REPUBLIC OF ARGENTINA*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ...................................................................................... 1

STATEMENT OF JURISDICTION................................................................. 3

ISSUES PRESENTED FOR REVIEW ........................................................... 4

STATEMENT OF THE CASE....................................................................... 4

STATEMENT OF FACTS ........................................................................... 6

    A.    Background ................................................................... 6

    B.    Plaintiff-Appellee NML .................................................. 9

    C.    The Chevron Subpoena ................................................. 12

    D.    The Magistrate Judge Denies The Republic's Motion To
           Quash, And The District Court Denies The Republic's
           Objections To The Discovery Order ................................. 15

SUMMARY OF ARGUMENT ..................................................................... 16

STANDARD OF REVIEW .......................................................................... 19

ARGUMENT .......................................................................................... 19

    THE DISTRICT COURT ERRED IN HOLDING THAT THE
    FSIA HAS NO BEARING ON THE ASSET DISCOVERY
    SOUGHT BY NML.......................................................................... 19

    A.    The FSIA Limits Discovery In Aid Of Execution Of A
           Foreign  State's Property............................................... 19

    B.    The Magistrate Judge's And District Court's Reliance On
           Inapposite And Out-Of-Circuit Decisions Was Erroneous........ 26

i

**Page**

C.    The District Court Erred In Holding That The FSIA Does Not Limit Discovery Regarding Assets Located Outside Of The United States .................................................................................    32

CONCLUSION ...............................................................................    36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*,
475 F.3d 1080 (9th Cir. 2007) ....................................................... *passim*

*Alpha Therapeutic Corp. v. Nippon Hoso Kyokai*,
199 F.3d 1078 (9th Cir. 1999), *withdrawn on other grounds sub nom.*,
*Alpha Therapeutic Corp. v. Kyokai*, 237 F.3d 1007 (9th Cir. 2011) ............. 21, 32, 34

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) ........................................................................ 19

*Aurelius Capital Partners, LP v. Republic of Argentina*,
584 F.3d 120 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 1691 (2010) ............... 10

*Aurelius Capital Partners v. Republic of Argentina*,
No. 07 Civ 2715, 2013 WL 857730 (S.D.N.Y. Mar. 7, 2013) ..................... 29

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
499 F.3d 737 (7th Cir. 2007) ........................................................ 33, 35

*Cassirer v. Kingdom of Spain*,
616 F.3d 1019 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 3057 (2011)............. 3, 19

*Conn. Bank of Commerce v. Republic of Congo*,
309 F.3d 240 (5th Cir. 2002) .......................................................... 22

*EM Ltd. v. Republic of Argentina*,
131 F. App'x 745 (2d Cir. 2005) ..................................................... 11

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007)*cert. denied*, 522 U.S. 818 (2007)..................... 10, 23, 24

*EM Ltd. v. Republic of Argentina*,
695 F.3d 201 (2d Cir. 2012)........................................................ *passim*

*FG Hemisphere Assocs., LLC v. Republique du Congo*,
455 F.3d 575 (5th Cir. 2006) ......................................................... 25

Page(s)

*H.W. Urban GmbH v. Republic of Argentina,*
No. 02 Civ. 5699 (TPG), 2003 WL 21058254 (S.D.N.Y. May 12, 2003) ..... 8

*Ibrahim v. Dep't of Homeland Sec.,*
669 F.3d 983 (9th Cir. 2012) ................................................................ 19

*In re Estate of Ferdinand Marcos Human Rights Litig.,*
94 F.3d 539 (9th Cir. 1996) ................................................................ 32

*In re Grand Jury Proceedings,*
45 F.3d 343 (9th Cir. 1995) ............................................................ 3, 19

*Keller Found./Case Found. v. Tracy,*
696 F.3d 835 (9th Cir. 2012) ......................................................... 18, 33

*Morrison v. Nat'l Australia Bank Ltd.,*
130 S. Ct. 2869 (2010) ................................................................... 18, 34

*NML Capital, Ltd. v. Banco Central De La República Argentina,*
652 F.3d 172 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 23 (2012) ................... 10

*NML Capital, Ltd. v. Republic of Argentina,*
699 F.3d 246 (2d Cir. 2012) ........................................................... 11-12

*NML Capital, Ltd. v. Republic of Argentina,*
No. 04-00197 (CKK), 2005 U.S. Dist. LEXIS 47027
(D.D.C. Aug. 3, 2005) ...................................................................... 10

*NML Capital, Ltd. v. Republic of Argentina,*
No. 09 Civ. 7013 (TPG), 2011 WL 524433 (S.D.N.Y. Feb. 15, 2011) ......... 13

*NML Capital, Ltd. v. Republic of Argentina,*
No. 09 Civ. 7013 (TPG), 2012 WL 3798217 (S.D.N.Y. Aug. 29, 2012) ....... 13

*NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.,*
788 F. Supp. 2d 1111 (C.D. Cal. 2011) .................................... 10, 23-24

*Peterson v. Islamic Republic of Iran,*
627 F.3d 1117 (9th Cir. 2010) ...................................................... *passim*

iv

**Page(s)**

*Peterson v. Islamic Republic of Iran,*
No. C 08-80030-MISC JSW, 2008 WL 5046327
(N.D. Cal. Nov. 24, 2008) .................................................................... 24

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,*
109 F.3d 850 (2d Cir. 1997) ................................................................... 8

*Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat,*
244 F. Supp. 2d 1130 (D. Colo. 2002) ........................................ 26, 34-35

*Republic of Philippines v. Pimentel,*
553 U.S. 851 (2008) .............................................................................. 22

*Richmark Corp. v. Timber Falling Consultants,*
959 F.2d 1468 (9th Cir. 1992) .................................................... 15, 27, 28

*Rolex Watch, U.S.A., Inc. v. Michel Co.,*
179 F.3d 704 (9th Cir. 1999) ................................................................ 19

*Rubin v. Islamic Republic of Iran,*
637 F.3d 783 (7th Cir. 2011), *cert. denied*, 133 S. Ct. 23 (2012) .................. *passim*

*S.E.C. v. CMKM Diamonds, Inc.,*
656 F.3d 829 (9th Cir. 2011) ................................................................. 3

*Verlinden B.V. v. Cent. Bank of Nigeria,*
461 U.S. 480 (1983) ................................................................... 19-20, 32

*Walters v. Indus. & Commercial Bank of China, Ltd.,*
651 F.3d 280 (2d Cir. 2011) ............................................................ 30, 31

**Rules and Statutes**

28 U.S.C. § 1609 .................................................................. 17, 20, 25, 33

28 U.S.C. § 1610(a) ....................................................................... *passim*

Fed. R. Civ. P. 26(b)(1) ................................................................... 31-32

Fed. R. Civ. P. 69(a) .......................................................................... 33

Fed. R. Civ. P. 69(a)(1) ...................................................................... 31

**Page(s)**

**Other Authorities**

Carmen M. Reinhart & Kenneth S. Rogoff, *This Time is Different: A Panoramic View of Eight Centuries of Financial Crises* (2008), *available at* http://www.economics.harvard.edu/files/faculty/ 51_This_Time_Is_Different.pdf ........................................................................... 7

Forrest McDonald, *Alexander Hamilton: A Biography* (1979) ...................... 7-8

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ......... 33

Jonathan C. Lippert, Note, *Vulture Funds: The Reason Why Congolese Debt May Force a Revision of the Foreign Sovereign Immunities Act*, 21 N.Y. Int'l L. Rev. 1 (2008) ........................................................................... 9-10

Panel of Independent Advisors, *Economic and Financial Issues Facing Argentina*, Report to the Government of Argentina and the International Monetary Fund (July 29, 2002), *available at* http://www.imf.org/external/ np/sec/nb/2002/nb0280.htm. ........................................................................... 7

Paul Blustein, *And the Money Kept Rolling In (and Out): Wall Street, the IMF, and the Bankrupting of Argentina* (2005) ............................................. 6-7

Press Release, Human Rights, *'Vulture Funds' – UN expert on foreign debt welcomes landmark law to address profiteering* (Apr. 20, 2010), *available at* http://www.ohchr.org/en/NewsEvents/Pages/DisplayNews.aspx?NewsID=9 976 ........................................................................... 9

Ross P. Buckley, *The Bankruptcy of Nations: An Idea Whose Time Has Come*, 43 Int'l Law. 1189 (2009) ........................................................................... 7

## INTRODUCTION

Defendant-Appellant the Republic of Argentina (the "Republic"), a foreign sovereign nation, appeals from two district court Orders (the "Discovery Order" and the "Order Denying Objection") rejecting the Republic's motion to quash a post-judgment subpoena (the "Subpoena") served on non-party Chevron Corporation ("Chevron").[1]  The Orders improperly provide for broad discovery concerning Republic assets without regard as to whether those assets are immune from attachment and execution under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA").  That ruling cannot be reconciled with the decisions of this Court and other courts of appeals holding that sovereign asset discovery must be ordered "circumspectly" and only to verify allegations of specific facts crucial to an immunity determination – an inquiry limited to whether specific sovereign property is located in the United States and used here for a commercial activity.  The Orders, which uphold a Subpoena that is not directed at any property in particular (much less property in the United States) and seeks,

---

[1]  The October 17, 2012 order of Magistrate Judge James denying the Republic's Motion to Quash is referred to as the "Discovery Order" (ER at 4); the November 13, 2012 district court order denying the Republic's Objections to the Discovery Order is referred to as the "Order Denying Objection" (ER at 1); together, referred to as the "Orders."

1

among other things, information regarding undisputedly immune Republic assets located *outside* the United States, are accordingly flawed on their face.

Although the district court acknowledged that the FSIA limits post-judgment asset discovery directed at foreign states because the statute protects sovereigns from the associated burden and expense, the court held that the FSIA does not apply at all when that same discovery is instead sought from third parties because there is purportedly no related burden or expense to the sovereign. This ruling ignores that the FSIA's property immunities inhere in the property itself and so circumspection as to discovery concerning such property is required just as circumspection is necessary in the jurisdictional context as to the sovereign itself. The need for circumspection is even more appropriate here, because the immunity afforded sovereign property is broader than the FSIA's jurisdictional immunity. The Orders also ignore that such discovery *does* subject foreign states to the burden and expense from which the FSIA was intended to protect them, namely intrusive inquiries into their property and third-party relationships, spillover litigation involving the sovereign itself, and an increased cost of doing business with third parties, who will pass on to foreign states the cost of responding to broad asset discovery that could not, consistent with the FSIA, be obtained from the sovereign itself.

The Court should correct the district court's error, and reverse and vacate the Orders.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action pursuant to the FSIA, 28 U.S.C. §§ 1330 and 1605(a)(1). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 for two reasons. First, the Orders are appealable under Section 1291 because they seek information from a third party and thus the Republic does not have the ability to "challenge the [Orders] in a later contempt proceeding." *In re Grand Jury Proceedings*, 45 F.3d 343, 346 (9th Cir. 1995) (explaining the Ninth Circuit's "well recognized exception to the rule precluding an appeal from a denial of a motion to quash a subpoena duces tecum when the subpoena is directed to a third party") (citing *In re Grand Jury Proceedings Dated Dec. 10, 1987*, 926 F.2d 847, 853 (9th Cir. 1991)); *see also S.E.C. v. CMKM Diamonds, Inc.*, 656 F.3d 829, 830-31 (9th Cir. 2011). Second, the Orders are appealable under the collateral order doctrine because they deny the Republic and its property sovereign immunity. *See, e.g.*, *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1024-25 (9th Cir. 2010) ("It is well settled that sovereign immunity is within th[e] small category of cases from which an immediate appeal will lie"), *cert. denied*, 131 S. Ct. 3057 (2011).

## ISSUES PRESENTED FOR REVIEW

1.     Under the FSIA, the property of a foreign sovereign is immune from attachment and execution, even when it is in the hands of a third party, unless it is both in the United States and used here for a commercial activity.  Did the district court err in denying the Republic's motion to quash discovery in aid of execution that seeks – untethered to any specific immunity determination – extensive information about Republic assets, including immune assets located outside the United States, simply because the discovery was served on a third party and not the Republic itself?

2.     The Ninth Circuit has adopted a strong presumption that federal statutes do not apply extraterritorially.  Did the district court err in ruling that the FSIA, which is the sole basis for exercising jurisdiction over, and enforcing judgments against, a foreign sovereign in United States courts, nevertheless does not apply to limit a court's power to enforce post-judgment discovery for use in enforcement proceedings outside the United States aimed at executing on assets located beyond the territorial bounds of the United States?

## STATEMENT OF THE CASE

As the Court has recognized, the scope of both jurisdictional and asset discovery against foreign states is limited by the immunities afforded sovereigns and their property under the FSIA.  This appeal concerns whether the fact that a

4

private judgment creditor directs asset discovery at a non-sovereign third party instead of the foreign state itself somehow renders the FSIA inapplicable, notwithstanding that any sovereign property in the hands of a third party remain immune from attachment and execution.

Plaintiff-Appellee NML Capital, Ltd. ("NML"), a Cayman Islands hedge fund and speculator in defaulted sovereign debt, is a judgment creditor of the Republic. In July and August of 2012, as part of an ongoing fishing expedition to obtain, via United States court proceedings, information about Argentine sovereign assets worldwide, NML propounded five substantially identical subpoenas on non-party energy companies in California and Texas, including Chevron. The Subpoena directed to Chevron seeks information concerning Republic assets not only in the United States, but also in Argentina and around the world. The Subpoena also demands expansive information concerning the purported hydrocarbon activities of entities *other* than the Republic, against which NML has no judgment.

On August 7, 2012, the Republic moved to quash the Subpoena on the basis that, *inter alia*, the Subpoena exceeded the bounds of the FSIA, which circumscribes the scope of post-judgment discovery in proceedings against foreign sovereigns to specific inquiries concerning property of the sovereign purportedly in the United States and used for a commercial activity in the United States. *See* 28

5

U.S.C. § 1610(a); ER at 184.  On October 17, 2012, Magistrate Judge James issued

the Discovery Order denying the Republic's Motion to Quash the Subpoena (ER at

4), stating that because the Subpoena was directed to third party Chevron and not

the Republic, it did not implicate the FSIA.  The Republic's Objections to Judge

James's Discovery Order were subsequently denied by the district court in the

Order Denying Objection, dated November 13, 2012 (ER at 1).  The Republic

timely filed a notice of appeal from both the Discovery Order and the Order

Denying Objection on December 12, 2012 (ER at 18).

## STATEMENT OF FACTS

### A.    Background

Between 1998 and 2002, the Republic experienced the worst

economic crisis of its modern history, marked by an enduring recession, fiscal

imbalance, and lack of access to the international capital markets.  *See* Decl. of

Noemi C. LaGreca ¶¶ 4-13, *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507

(TPG) (S.D.N.Y. June 11, 2003); Decl. of Federico Carlos Molina ¶ 3, *NML*

*Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG) (S.D.N.Y. Mar. 24,

2005); *see also* Paul Blustein, *And the Money Kept Rolling In (and Out): Wall*

*Street, the IMF, and the Bankrupting of Argentina* 1 (2005) (describing collapse of

Argentine economy in 2001 as "one of the most spectacular in modern history").

With its economy in ruins, the country suffered social and political turmoil: riots in

the streets of Buenos Aires left dozens dead and four presidents resigned within a two-week period.[2]  *See* Blustein, *supra*, at 1.

By the end of 2001, this crisis made it impossible for the Republic to service its overwhelming debt burden – some $80 billion in public external debt alone – while maintaining basic governmental services necessary for the health, welfare, and safety of the Argentine populace.  "[U]nable to service its debts," the Republic had no choice but to defer interest and principal payments to its bondholders.  *See* Panel of Independent Advisers, *Economic and Financial Issues Facing Argentina*, Report to the Government of Argentina and the International Monetary Fund, ¶ 1 (July 29, 2002), *available at* http://www.imf.org/external/np /sec/nb/2002/nb0280.htm.  Like many nations that have faced economic crisis and unsustainable indebtedness, including the United States in the early days of the Constitution, *see generally* Forrest McDonald, *Alexander Hamilton: A Biography*

---

[2]   The Argentine crisis has been described as the "worst-case scenario" in eight centuries of modern financial crises.  *See* Carmen M. Reinhart & Kenneth S. Rogoff, *This Time is Different: A Panoramic View of Eight Centuries of Financial Crises*, at 51 (2008), *available at* http://www.economics.harvard.edu/ files/faculty/51_This_Time_Is_Different.pdf; *see also* Ross P. Buckley, *The Bankruptcy of Nations: An Idea Whose Time Has Come*, 43 Int'l Law. 1189, 1196 (2009) (describing Argentina's economic crisis: "The living standards of over one-half of the Argentine people fell below the poverty line, and over a third could not afford basic food.  Children were fainting in class from hunger, regularly.  Adults were rioting and breaking into supermarkets, regularly, in search of food.  UNICEF Argentina was concerned that stunted growth and reduced mental capacities would be the long-term consequence of this economic crisis for millions of the nation's children.").

163-88 (1979), the Republic was forced to seek restructuring of both its external

and internal public debt.[3]

        Because there is no bankruptcy regime for insolvent states, the

Republic restructured its external debt on an entirely voluntary basis. The

Republic did not repudiate that debt. Instead, consistent with United States policy

favoring the orderly and consensual restructuring of sovereign debt, the Republic

restructured its unsustainable debt burden through two global exchange offers in

2005 and 2010, in which participating holders exchanged old, nonperforming bond

interests for new, performing bond interests with lower interest rates, reduced

principal, and/or longer maturities. The exchange offers were extended to all

beneficial owners of eligible bonds – including NML – on the same terms, and

reflected the Republic's commitment to treat its private creditors equitably.

Owners tendered approximately 92% of the aggregate eligible debt in the exchange

---

[3]    The United States, the international financial community, and the federal courts
have all recognized the importance of voluntary sovereign debt restructuring.
*See, e.g.*, Brief for the United States as *Amicus Curiae* in Support of Reversal,
*NML Capital, Ltd. v. Republic of Argentina*, No. 12-105-cv(L), 2012 WL
1150791, at *6-10 (2d Cir. Apr. 4, 2012); Statement of Interest of the United
States, *Macrotecnic Int'l Corp. v. Republic of Argentina*, No. 02 Civ. 5932
(TPG), 2004 WL 5475206, at *2-6 (S.D.N.Y. Jan. 12, 2004); *H.W. Urban
GmbH v. Republic of Argentina*, No. 02 Civ. 5699 (TPG), 2003 WL 21058254,
at *2 (S.D.N.Y. May 12, 2003) ("[A]n important channel for attempting to
resolve the Argentine debt problem will undoubtedly be the effort to negotiate a
debt restructuring plan."); *cf. Pravin Banker Assocs., Ltd. v. Banco Popular del
Peru*, 109 F.3d 850, 855 (2d Cir. 1997) ("[T]he United States encourages
participation in, and advocates the success of, IMF foreign debt resolution
procedures . . . .").

offers, making the Republic's sovereign debt restructuring the largest in history at that time. *See* Republic of Argentina, Annual Report (Form 18-K), at 17 (Sept. 30, 2011), *available at* http://www.sec.gov/Archives/edgar/data/914021/ 000090342311000486/roa-18k_0928.htm. NML declined to participate in either restructuring.

**B.    Plaintiff-Appellee NML**

NML is a Cayman Islands hedge fund, established exclusively to buy distressed Republic debt, that acquired beneficial interests in Republic bonds at a deep discount both immediately before, and well after, the Republic suspended payments on its unsustainable external debt in December 2001. NML and similar "vulture" hedge funds seek to take advantage of the absence of bankruptcy protection in the sovereign context by bringing lawsuits for the face value of defaulted sovereign debt, obtaining judgments on which interest continues to run indefinitely, and then using aggressive means to try to execute them.[4]

---

[4]    *See, e.g.*, Press Release, Office of the High Commissioner for Human Rights, *'Vulture Funds' – UN expert on foreign debt welcomes landmark law to address profiteering* (Apr. 20, 2010), *available at* http://www.ohchr.org/en/ NewsEvents/Pages/DisplayNews.aspx?NewsID=9976&LangID=E (last visited Mar. 21, 2013) ("[T]he profiteering of 'vulture funds' [has been] at the expense of both the citizens of distressed debtor countries and the taxpayers of countries that have supported international debt relief efforts . . . . 'Vulture funds' have exploited the voluntary nature of international debt relief schemes by acquiring defaulted sovereign debt at deeply discounted prices and then seeking repayment of the full value of the debt through litigation, seizure of assets or political pressure.") (internal quotation marks omitted); Jonathan C. Lippert,

9

NML has used these aggressive tactics against the Republic, while at the same time continuing to speculate in nonperforming Republic debt, filing a new complaint against the Republic as recently as 2009 on more than $100 million of defaulted Republic bond interests that it purchased in late 2008. *See NML Capital, Ltd. v. Republic of Argentina*, No. 09 Civ. 1708 (TPG) (S.D.N.Y. compl. filed Feb. 24, 2009). NML's enforcement tactics include a series of execution attempts against property of the Republic and other entities that the federal courts have in most cases rejected as violating the FSIA,[5] and an attempt in March 2005

---

Note, *Vulture Funds: The Reason Why Congolese Debt May Force a Revision of the Foreign Sovereign Immunities Act*, 21 N.Y. Int'l L. Rev. 1, 2, 27 (2008) (vulture funds seek "extraordinary profits at the expense of U.S. companies, the U.S. economy and U.S. foreign relations . . . potentially affecting debt restructuring in all emerging markets").

[5]  *See, e.g.*, *NML Capital, Ltd. v. Banco Central De La República Argentina*, 652 F.3d 172, 196-97 (2d Cir. 2011) (rejecting NML's attempt to attach property of the central bank of Argentina), *cert. denied*, 133 S. Ct. 23 (2012); *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 124, 130-31 (2d Cir. 2009) (rejecting attempt by NML and others to execute upon Argentine social security funds because the Republic had not "used [the funds] for a commercial activity in the United States"), *cert. denied*, 130 S. Ct. 1691 (2010); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 465-66 (2d Cir. 2007) (rejecting NML's attempt to attach property of the central bank of Argentina), *cert. denied*, 522 U.S. 818 (2007); *NML Capital, Ltd. v. Spaceport Sys. Int'l., L.P.*, 788 F. Supp. 2d 1111, 1127 (C.D. Cal. 2011) (rejecting NML's attempt to execute on satellite jointly launched by Argentine space agency, NASA, and other nations' space agencies); *NML Capital, Ltd. v. Republic of Argentina*, No. 04-00197 (CKK), 2005 U.S. Dist. LEXIS 47027 (D.D.C. Aug. 3, 2005) (vacating NML's *ex parte* attachments of diplomatic and military property in Washington, D.C. and Maryland).

to disrupt the settlement of the Republic's global exchange offer by attaching – on an *ex parte* basis – the nonperforming bonds tendered by their beneficial owners into that exchange.  *See EM Ltd. v. Republic of Argentina*, 131 F. App'x 745, 747 (2d Cir. 2005) (affirming vacatur of this attachment).  They also include – of particular interest here – similar unsuccessful efforts to enforce its United States judgments outside the United States, ranging from an attempt to attach taxes owed to the Republic in France,[6] to attempts to attach diplomatic bank accounts in France[7] and Belgium,[8] as well as the recent attempted seizure of an Argentine naval training vessel in Ghana,[9] in each case *without* any claim by NML that it needed discovery from a United States court to pursue these legally improper execution efforts.[10]

---

[6]  *See NML Capital, Ltd. v. Republic of Argentina*, Cour d'appel [CA] [regional court of appeal] Paris, 4e pôle 8e ch., Dec. 9, 2010, No. 10/00390 (Fr.) (appeal pending to the Cour de Cassation [French Supreme Court]).

[7]  *See NML Capital, Ltd. v. Republic of Argentina*, Cour de cassation [Cass.] [supreme court for judicial matters] 1e civ., Sept. 28, 2011, Bull. civ. I, No. 867 (Fr.), *available at* http://www.courdecassation.fr/jurisprudence_2/ premiere_chambre_civile_568/867_28_21103.html.

[8]  *See Republic of Argentina v. NML Capital, Ltd.*, Cour de Cassation [Cass.] [Court of Cassation], Nov. 22, 2012, No. C.11.0688.F/1 (Belg.).

[9]  *The "ARA Libertad Case" (Argentina v. Ghana)*, International Tribunal for the Law of the Seas (ITLOS), Dec. 15,  2012, *available at* http://www.itlos.org/ fileadmin/itlos/documents/cases/case_no.20/C20_Order_15_12_2012.pdf.

[10]  Most recently, NML has sought to enjoin the Republic from making any

11

C.     **The Chevron Subpoena**

Beginning in 2010, NML embarked on an unprecedented discovery

campaign. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 203 (2d Cir. 2012)

(noting NML's search, beginning in 2010 to "locate Argentina's assets and

accounts, learn how Argentina moves its assets through New York and around the

world, and accurately identify the places and times when those assets might be

subject to attachment and execution (whether under [U.S. law] or the law of

foreign jurisdictions)") (citation omitted).  In July and August of 2012, as part of

this campaign, NML served a subpoena on non-party Chevron in California, along

with substantially identical subpoenas on non-parties ConocoPhillips, ExxonMobil

Corporation, EOG Resources, Inc., and Apache Oil Corporation in Texas.[11]

---

payments on its restructured debt unless it also pays 100% of NML's defaulted
debt, an issue that is currently before the Second Circuit after that court initially
upheld NML's claim to injunctive relief but remanded to the district court for
further proceedings regarding key aspects of the scope of the injunction.  *See
NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 265 (2d Cir. 2012),
*on remand*, No. 08 Civ. 6978 (TPG), 2012 WL 5895786 (S.D.N.Y. Nov. 21,
2012) (stayed by the Second Circuit on Nov. 28, 2012).

[11]   The Republic also moved to quash the subpoenas served by NML in Texas;
those motions remain pending.  *See* Motion to Quash of the Republic of
Argentina, *NML Capital, Ltd. v. Republic of Argentina*, No. 4:12-mc-00564
(S.D. Tex. Sept. 6, 2012), The Republic of Argentina's Motion to Quash and
Brief in Support, *NML Capital, Ltd. v. Republic of Argentina*, No. 3:12-mc-
000086 (N.D. Tex. Sept. 11, 2012), Motion to Quash of the Republic of
Argentina, *NML Capital, Ltd. v. Republic of Argentina*, No. 3:12-mc-00080
(N.D. Tex. Sept. 17, 2012).

The Subpoena served on Chevron sweepingly defined "Argentina" to include a host of separate legal entities, including the Republic's "provinces, cities, municipalities, and the like." Subpoena at 3, ¶ 2 (ER at 33). The Subpoena also defined "Argentina" to include agencies or instrumentalities of the Republic that are distinct from the Republic as a matter of law, such as Energía Argentina S.A. ("ENARSA'") and Yacimientos Petrolíferos Fiscales S.A. ("YPF"). *Id.* at 3-4, ¶¶ 6, 10 (ER at 33-34). NML's inclusion of these separate corporate entities in the definition of "Argentina" was improper on its face: Argentine energy company ENARSA has already been adjudicated *on two separate occasions* to be separate from the Republic and not liable for its debts *in a proceeding involving NML*, *see NML Capital, Ltd. v. Republic of Argentina*, Nos. 09 Civ. 7013 (TPG), 2011 WL 524433, at **6-8 (S.D.N.Y. Feb. 15, 2011); 09 Civ. 7013 (TPG), 2012 WL 3798217, at *4 (S.D.N.Y. Aug. 29, 2012), and YPF – another agency or instrumentality of the Republic – is likewise entitled to the same presumption of separateness unless and until NML demonstrates otherwise.

As to the Republic, YPF, and the many other separate entities targeted in the Subpoena, NML seeks broad, untargeted categories of documents concerning hydrocarbon activity *outside of the United State*s – both *within* Argentina and throughout the world, including:

13

- "All documents relating to the possibility of new investment or any other form of participation or involvement in the production of hydrocarbons within Argentina" (Subpoena at 8, ¶ 1) (ER at 38);

- Documents identifying the participants and subject matter of any meetings and communications with "Argentina," including but not limited to YPF and ENARSA (*Id.* at ¶ 2);

- "All documents concerning any payments or anticipated payments" by Chevron to "Argentina," including but not limited to YPF and ENARSA (*Id.* at ¶ 3);

- "All documents concerning any sales or deliveries, or potential future sales or deliveries of hydrocarbons" by Chevron to "Argentina," including but not limited to YPF and ENARSA (*Id.* at ¶ 4);

- All documents relating to communications concerning efforts to avoid "(a) the potential for attachment or seizure of property by creditors of Argentina, or (b) the disclosure of information potentially relevant to the identification of property of Argentina" (*Id.* at ¶ 5).[12]

The Republic moved to quash the Subpoena on August 7, 2012 on the grounds that the discovery improperly exceeded the scope of the FSIA by seeking general asset discovery untethered to any immunity determination, including discovery concerning property categorically immune from attachment and execution under that statute – *i.e.*, property outside of the United States.  *See* 28

---

[12]   After propounding the Subpoena, NML withdrew its request for documents concerning ENARSA.  *See* Joint Letter Regarding Discovery Dispute (ER at 49).

U.S.C. § 1610(a); ER at 184.[13]  The Republic also argued that the Subpoena was

otherwise improper under the Federal Rules of Civil Procedure and state law,

which self-evidently limit post-judgment execution and related discovery to the

*judgment debtor's* assets.  *Id.*

> The parties subsequently met and conferred in an effort to resolve the

discovery issues raised with the court but were unsuccessful.  On October 15,

2012, in accordance with Magistrate Judge James's Standing Order (ER at 182),

the parties submitted a joint letter to the Magistrate Judge stating their respective

positions.  *See* ER at 42.

**D.   The Magistrate Judge Denies The Republic's Motion To Quash, And The District Court Denies The Republic's Objections To The Discovery Order**

> In the Discovery Order, Magistrate Judge James denied the Republic's

motion to quash.  *See* ER at 4.  Relying on *Richmark Corp. v. Timber Falling

Consultants*, 959 F.2d 1468 (9th Cir. 1992) and *EM Ltd. v. Republic of Argentina*,

695 F.3d 201 (2d Cir. 2012), the Magistrate Judge ruled that the FSIA does not

limit third-party discovery in proceedings against sovereigns, *see* Discovery Order

at 2 (ER at 5), even if such disclosure concerns sovereign property that

indisputably cannot be subject to creditor process under the FSIA.  The Magistrate

---

[13]   Chevron itself filed Objections to the Subpoena on August 8, 2012.  *See* ER at 51.

Judge did, however, limit the Subpoena "to the Republic and not any separate entities," such as YPF. *Id.* at 3 (ER at 6).[14]

The Republic objected to the Discovery Order to the extent it ruled that the FSIA does not apply to the broad extraterritorial post-judgment asset discovery sought by NML. ER at 20. Although the district court correctly acknowledged that improper discovery requests *served on a sovereign itself* are a burden "from which [the] FSIA protects foreign sovereigns," the district court nevertheless concluded that the Republic was not burdened by the broad worldwide discovery sought by NML because the discovery was served on a third party – here, Chevron – and accordingly denied the Republic's Objections on November 13, 2012. ER at 2. The Republic appealed.

## SUMMARY OF ARGUMENT

Despite this Court's clear law to the contrary, which recognizes that the FSIA's property immunities act to limit discovery of sovereign assets, the district court allowed NML to demand from Chevron information untethered to any specific immunity determination, including information concerning

---

[14] Following the Magistrate Judge's Discovery Order, NML continued to pursue discovery concerning YPF based on allegations that YPF *might* be the "alter ego" of the Republic. The Magistrate Judge, in a ruling dated February 21, 2013, denied NML's renewed request, concluding that NML had failed as a matter of law to demonstrate that it is entitled to such discovery under an alter ego theory (ER at 14). NML has filed an Objection to that ruling with the district court (ER at 8), which has set March 29, 2013 as the deadline for the Republic's response.

indisputably immune Republic assets located outside the United States.  *See* Discovery Order (ER at 4); Subpoena at 8, ¶ 1 (ER at 38).  The Orders are thus erroneous as a matter of law, and the district court abused its discretion in entering them.

The FSIA is clear that a sovereign's property is immune from attachment and execution unless that property is in the United States and being used here for a commercial activity.  *See, e.g.*, 28 U.S.C. §§ 1609, 1610; *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1128, 1132 (9th Cir. 2010) (explaining that "courts should proceed carefully in enforcement actions against foreign states" and affirming denial of plaintiff's attempt to execute on property that was located outside of the United States and thus immune under the FSIA).  Because these limitations stem from Congress's overarching goal "to protect sovereigns from the burdens of litigation, including . . . discovery," *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 795 (7th Cir. 2011), *cert. denied*, 133 S. Ct. 23 (2012), any discovery concerning a foreign state's property must be circumspect and focused on specific facts necessary to determine if the property at issue is immune.  *Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1095-96 (9th Cir. 2007).  A plaintiff seeking to obtain discovery concerning sovereign assets must therefore both identify the assets sought and plausibly allege that an exception to immunity applies to that property – showings that NML did not even try to make below.

17

The district court held that none of this caselaw or congressional intent mattered because the Subpoena was served on a third party and not the Republic itself. The Orders thus allow a private litigant to vitiate the FSIA's property immunities by seeking discovery from third parties that he or she could not otherwise obtain under the FSIA. The text of the FSIA does not support such a distinction. Under the plain language of the statute, sovereign property is immune regardless of whether it is held by the foreign state or a third party. Nor is the district court ruling consistent with the goal of protecting sovereigns from the burden and expense of discovery as it exposes sovereigns to intrusive inquiries into their property and third-party relationships as well as increased litigation costs.

The Orders, in allowing post-judgment discovery in aid of execution of sovereign assets outside the United States, are all the more improper as they conflict with this Court's presumption that enactments of Congress do not reach beyond the United States. *Keller Found./Case Found. v. Tracy*, 696 F.3d 835, 844 (9th Cir. 2012) (articulating the Court's "strong presumption that enactments of Congress do not apply extraterritorially"); *accord Morrison v. Nat'l Australia Bank, Ltd.*, 130 S. Ct. 2869 (2010). The FSIA provides the comprehensive scheme for post-judgment execution remedies against sovereigns – which includes post-judgment discovery in aid of judgment execution – and by its plain terms limits all such remedies to the enforcement of judgments in the United States on property

18

used for a commercial activity in the United States.  The FSIA does not permit a
United States court to serve as a clearinghouse for discovery that might be of use in
litigation proceedings in foreign courts.

## STANDARD OF REVIEW

The Court reviews *de novo* questions of sovereign immunity,
including legal conclusions denying FSIA immunity to a foreign state and its
property.  *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1026 (9th Cir. 2010); *Af-Cap*, 475 F.3d at 1085-86.  This Court reviews the district court's denial of the
Republic's motion to quash for abuse of discretion.  *In re Grand Jury Proceedings*,
45 F.3d 343, 346 (9th Cir. 1995); *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d
983, 992 (9th Cir. 2012).  The "district court abuses its discretion if its conclusion
is based on clearly erroneous factual findings or if its decision relies on erroneous
legal conclusions."  *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 708
(9th Cir. 1999) (citation omitted).

## ARGUMENT

## THE DISTRICT COURT ERRED IN HOLDING THAT THE FSIA HAS NO BEARING ON THE ASSET DISCOVERY SOUGHT BY NML

### A.    The FSIA Limits Discovery In Aid Of Execution Of A Foreign State's Property

The FSIA "provides the sole basis for obtaining jurisdiction over a
foreign state in federal court."  *Argentine Republic v. Amerada Hess Shipping*

*Corp.*, 488 U.S. 428, 439 (1989); *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493, 496 (1983) ("The statute must be applied by the District Court[] in *every* action against a foreign sovereign" and "[a]s the House Report clearly indicates, the primary purpose of the Act was to 'se[t] forth *comprehensive* rules governing sovereign immunity,'" (citing H.R. Rep. No. 94-1487 at 12 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6616.) (emphasis added).

As this Court explained in *Peterson*, the FSIA provides for two distinct types of immunity: jurisdictional immunity and execution immunity. 627 F.3d at 1124. Section 1604 of the FSIA "establishes the general rule that 'a foreign state shall be immune from the jurisdiction of the courts of the United States,'" and Sections 1605-1605A carve out the exceptions to that jurisdictional immunity. *Id.* As to execution immunity, the FSIA provides that, even when a sovereign is not immune from *jurisdiction* in United States courts, "property in the United States of a foreign state shall be immune from attachment[,] arrest and execution." 28 U.S.C. § 1609. Sections 1610-1611 of the FSIA contain the narrow and exclusive exceptions to the immunity of sovereign property, which for judgment creditors like NML is limited to property of the sovereign in the United States and used here for a commercial activity. *See id.* § 1610(a).

In *Af-Cap*, this Court held that, in accordance with the FSIA, "discovery against a foreign sovereign should be ordered circumspectly and only to

verify allegations of *specific facts crucial to the immunity determination*." 475 F.3d at 1096 (citation and internal quotation marks omitted). In training its analysis on the propriety of discovery against a sovereign state on facts critical to the immunity determination, the Court was necessarily limiting the scope of such discovery to what, and only to what, is essential to that determination. This Court also expressly recognized the FSIA's limits on discovery in *Alpha Therapeutic Corp. v. Nippon Hoso Kyokai*, 199 F.3d 1078, 1088 (9th Cir. 1999), *withdrawn on other grounds sub nom.*, *Alpha Therapeutic Corp. v. Kyokai*, 237 F.3d 1007 (9th Cir. 2011), in which the Court held that the FSIA requires courts to respect the "delicate balance 'between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery'" (quoting *First City, Texas–Houston N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) and *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992), and denying discovery where plaintiffs had "failed to establish the need to conduct discovery to resolve a jurisdictional issue.").

The FSIA limitations repeatedly recognized in this Circuit apply even more strongly in the post-judgment asset discovery context than in the jurisdictional context, since, as this Court has observed, the FSIA "exceptions to immunity from execution are more narrow than the exceptions from immunity

from suit." *Peterson*, 627 F.3d at 1128; *id.* ("Congress fully intended to create rights without remedies, aware that plaintiffs would often have to rely on foreign states to voluntarily comply with U.S. court judgments."); *Af-Cap.*, 475 F.3d at 1088 ("§1610(a) [the execution immunity provision] is a narrower exception" to sovereign immunity than that conferred by Section 1605, the jurisdictional immunity section "by operation of the phrase 'used for'"). The heightened protection afforded to sovereign property stems from the fact that the FSIA was enacted at a time when "the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action." *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 256 (5th Cir. 2002); *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 866 (2008) ("[P]re-FSIA, common law doctrine dictated that courts defer to executive determination of immunity because '[t]he judicial seizure' of the property of a friendly state may be regarded as 'an affront to its dignity and may . . . affect our relations with it.'") (citation omitted); *Peterson*, 627 F.3d at 1127-28 ("Congress was aware that, although the restrictive theory of sovereign immunity from suit had become an accepted principle of international law by the time of the FSIA's enactment, 'the enforcement of judgments against foreign state property remain[ed] a somewhat controversial subject.'") (citation omitted).

In *Rubin*, the Seventh Circuit reversed a broad order permitting general discovery of Iranian property located in the United States, citing the "identical message" of this Circuit in concluding that, "in the context of attachment proceedings against foreign-state property in the United States under the FSIA . . . the court must proceed narrowly, in a manner that respects the statutory presumption of immunity and focuses on the specific property alleged to be exempt." 637 F.3d at 796, 799 (citing, *inter alia*, *Af-Cap*, 475 F.3d at 1095-96). The court observed that Federal Rule 69(a), which governs all post-judgment proceedings, including discovery in aid of execution, states that "a federal statute governs to the extent it applies," and concluded that "the FSIA plainly applies and limits the discovery process" when a party seeks discovery of a foreign state's assets in aid of judgment enforcement, *id.* at 794-95, including because one of the purposes of sovereign immunity under the FSIA is to "shield foreign states" from "unwarranted litigation costs and intrusive inquiries." *Id.* at 796-97.

Thus, in the post-judgment context, discovery in FSIA proceedings must be directed to assets at least arguably not immune from attachment and execution, *i.e.*, in the statutory phrase of Section 1610(a), property of the foreign state "in the United States" being "used for a commercial activity in the United States." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 484 (2d Cir. 2007); *Rubin*, 637 F.3d at 799. This exception to the immunity of sovereign property is

23

"constru[ed] . . . narrowly and plac[es] the burden of production upon Plaintiff to show that [specific property] is exempt from sovereign immunity." *NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1127 (C.D. Cal. 2011); *see also Peterson v. Islamic Republic of Iran*, No. C 08-80030-MISC JSW, 2008 WL 5046327, at *2 (N.D. Cal. Nov. 24, 2008) ("Plaintiffs bear the burden to demonstrate the existence of specific property for attachment and that sovereign immunity as to such property has been waived."). If no plausible exception to immunity is alleged as to the property concerning which discovery is sought, that discovery is improper because it would interfere with a "sovereign's or a sovereign agency's legitimate claim to immunity from discovery," and it must be denied. *EM*, 473 F.3d at 486 (quoting *First City, Tex.-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998)).

This framework is consistent with the position of the United States government, as expressed in numerous court filings, most recently in its submission urging the Supreme Court to deny certiorari in *Rubin*. *See* Brief for the United States as *Amicus Curiae* at 11, *Rubin v. Islamic Republic of Iran*, No. 11-431 (U.S. May 25, 2012) (ER at 70) ("To permit burdensome discovery into a foreign state's property without regard to whether that property might fall within an exception to immunity would vitiate the FSIA's protections"); Brief of the United States of America as *Amicus Curiae* in Support of Affirmance at 24 n.5,

*Peterson v. Islamic Republic of Iran*, No. 08-17756 (9th Cir. June 25, 2009) (ER at 100) ("U.S. court orders permitting private litigants to take discovery from foreign states regarding their worldwide assets, even though those assets are not within the court's execution authority under the FSIA, could cause harm to our foreign relations.").

The Magistrate Judge and the district court accordingly erred in failing to quash the Subpoena directed to Chevron:

The Subpoena runs afoul of the FSIA insofar as it seeks information about sovereign property located *outside* the United States, because those assets are *immune from attachment and execution* under Section 1610. *See, e.g.*, Subpoena at 8, ¶ 1 (ER at 38) (seeking documents regarding the "production of hydrocarbons *within Argentina*") (emphasis added); 28 U.S.C. §§ 1609, 1610(a); *Peterson*, 627 F.3d at 1131-32 (affirming denial of plaintiff's execution attempt because targeted property was not located in the United States, and was thus immune under the FSIA); *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 585 (5th Cir. 2006) ("[C]ourts in the United States may execute only against [a sovereign state's] property in the United States that is used for commercial activities in the United States") (citation and internal quotations marks omitted). The Subpoena is therefore in no way limited to "circumspectly" verifying allegations of specific facts crucial to determining whether identified

25

sovereign property is immune from attachment and execution.[15] *See Af-Cap*, 475 F.3d at 1096 (affirming denial of discovery where "Af-Cap ha[d] not specified what additional discovery was warranted"); *Rubin*, 637 F.3d at 799; *see also Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1142 (D. Colo. 2002) (judgment creditor seeking discovery has an "obligation to state specific facts that would bring this action within a recognized FSIA exception to foreign sovereign immunity").[16]

## B. The Magistrate Judge's And District Court's Reliance On Inapposite And Out-Of-Circuit Decisions Was Erroneous

Despite the Subpoena's clear conflict with the FSIA, and the district court's recognition that the FSIA acts to shield sovereigns from the burdens of litigation, the district court concluded that, because the discovery is directed at a

---

[15] The Subpoena's lack of specificity is patent in, *inter alia*, the speculative nature of NML's demands for information regarding, *inter alia*, the "*possibility*" of hydrocarbon production *within Argentina*, and documents concerning "*potential*" future sales of hydrocarbons. Subpoena at 8, ¶¶ 1, 4 (ER at 38) (emphasis added).

[16] NML's failure to allege any immunity exception that might entitle it to execute upon "possible" hydrocarbon products in Argentina, or indeed any other assets about which it broadly seeks information comes as no surprise: the Subpoena is one of many virtually *identical* subpoenas served by NML on other energy companies as part of a larger fishing expedition that is not directed at any property in particular, but rather intended to harass and intimidate Chevron, the Republic, and the many other separate Argentine entities improperly caught up in the Subpoena.

third party and not at the Republic, the requested discovery is proper.  Discovery

Order at 2 (ER at 5); Order Denying Objection at 2 (ER at 2).  The Magistrate

Judge and the district court relied on an inapposite decision of this Court and an

out-of-circuit decision that is at odds with this Circuit's precedent in holding that

the FSIA had "no application whatsoever" to the instant case and refusing to quash

the Subpoena.  Discovery Order at 2 (ER at 5).

      *First*, the Magistrate Judge erroneously relied on the decision in

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992),

which it cited for the proposition that "the FSIA does not prohibit third-party

discovery issued to non-sovereigns."  Discovery Order at 2 (ER at 5).  The Court in

*Richmark* did not consider the FSIA's discovery limitations, much less hold that

the FSIA has no bearing on third-party discovery in proceedings against

sovereigns.  Before the Magistrate Judge's decision, no court in this Circuit had

ever interpreted *Richmark* as standing for that proposition.  Nor did the district

court, in rejecting the Republic's Objections to the Magistrate Judge's Order, rely

upon or cite *Richmark*.  *See* Order Denying Objection (ER at 1).

      The Court in *Richmark* considered whether discovery was appropriate

in light of Chinese state secrecy law, not the FSIA.  *See Richmark*, 959 F.2d at

1474 (China's "admitted interest in secrecy must be balanced against the interests

of the United States and the plaintiffs in obtaining the information").  The Court

applied a balancing test, weighing defendant's interest in avoiding prosecution under Chinese secrecy laws against plaintiff's right to discovery under non-FSIA U.S. law. *See id.* at 1474-79. Moreover, unlike the judgment debtor in *Richmark*, the Republic is a sovereign state, not a foreign state instrumentality. *See Af-Cap*, 475 F.3d at 1089 (noting the sharp distinction between the execution immunity afforded to property of sovereigns versus property of a sovereign instrumentality); *Rubin*, 637 F.3d at 797 (distinguishing *Richmark*, noting "the immunity exceptions in the FSIA for property owned by an *instrumentality* of a foreign state are much broader than the exceptions for property owned by the foreign state itself").

More fundamentally, the Magistrate Judge in the Discovery Order, and the district court in the Order Denying Objection, both relied on, as "persuasive" authority, an incorrect Second Circuit decision, *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012). In *EM* the Second Circuit reached the sweeping and novel conclusion that the FSIA places *no* limitation on a party's ability to seek post-judgment discovery concerning the assets of a foreign state located *anywhere* in the world. *See id.* at 209.

The district court cited *Rubin* in stating that the FSIA protects sovereigns from the burdens of responding to discovery. *See* Order Denying Objection at 2 (ER at 2) ("[R]esponding to the discovery requests would have burdened and required the [sovereign] to incur expenses, a burden from which

28

FSIA protects foreign sovereigns"). However, it ultimately followed *EM*, opining that because, as here, plaintiff served its expansive discovery requests on a *third party* rather than the Republic itself, the FSIA is irrelevant. *See EM*, 695 F.3d at 210 (concluding that "compliance with [the] subpoenas will cause Argentina *no* burden and *no* expense") (emphasis added); Order Denying Objection at 2-3 (ER at 2-3) (concluding that the Republic would not be "burdened by responding to the subpoenas"). In fact, as the Republic explained in its Objections, the burden and expense to the Republic caused by NML's improper Subpoena are self-evident and exist despite the fact that it was served on a third party. Broad extraterritorial discovery of this kind has led to equally intrusive discovery in the Southern District of New York of the Republic itself, which the district court, citing *EM*, upheld. *See Aurelius Capital Partners v. Republic of Argentina*, No. 07 Civ. 2715, 2013 WL 857730, at *3 (S.D.N.Y. Mar. 7, 2013) (denying the Republic's motion to quash plaintiffs' subpoena and relying on *EM* in "reject[ing] the Republic's arguments that the FSIA prohibits . . . the discovery sought").[17] Moreover, common sense suggests that when third parties such as Chevron are forced to submit to costly discovery devices because they have done business with, and

---

[17] As a result of improper discovery obtained in the Southern District of New York from a third party bank, NML tried, on an *ex parte* basis, to attach *diplomatic* bank accounts in Switzerland – an attempt that was ultimately rejected, although not without the Republic expending time and resources.

therefore have information regarding, a state, those costs will be passed on to the state in one form or another.

Nor can it be seriously argued that discovery about, for example, a state's diplomatic or military property served on a non-party bank or military contractor is less detrimental to sovereign immunity principles as the same discovery served on the state itself. The reasoning of the *EM* court and the district court here would treat the former as raising no issue under the FSIA – even though "execution immunity inures in the property itself." *Walters v. Indus. & Commercial Bank of China, Ltd.*,651 F.3d 280, 292 (2d Cir. 2011); *see also Rubin*, 637 F.3d at 799. It is the sovereign nature of the property and its use that gives rise to the immunity in each instance, not *who* raises the immunity claim or *what entity* is served with discovery. Allowing creditors to obtain discovery about extraterritorial or otherwise off-limits sovereign assets from third parties, where the same discovery would be impermissible if served on the state itself, would negate the protections of the FSIA, imposing the very burdens on the sovereign that the FSIA protects against – including unnecessary litigation and disclosure of information about assets not subject to attachment or execution. *See id.* at 795.

The Second Circuit recognized that its holding ran directly contrary to that of the Seventh Circuit in *Rubin*, but nonetheless "respectfully disagree[d]" with that holding, concluding that discovery does not implicate a foreign state's

30

immunity from execution or attachment because discovery does not itself attach a sovereign's property. *See EM*, 695 F.3d at 208-09. The Second Circuit thus found that the FSIA's limits on execution were irrelevant to discovery that has the sole purpose of aiding in that very execution, holding that it was enough that a district court has "subject matter and personal jurisdiction" over a foreign state. *See id.* at 209. This holding ignores that the FSIA's execution provisions provide for their own separate immunity determination that are narrower than those applicable in the jurisdictional context. *See Peterson*, 627 F.3d at 1128; *Walters*, 651 F.3d at 289 ("execution immunity afforded sovereign property is broader than the jurisdictional immunity afforded the sovereign itself"); *see also Rubin*, 637 F.3d at 797 (noting "critical error" in plaintiffs' contention that once a "court has exercised jurisdiction over a foreign sovereign and entered a judgment against it," a plaintiff is entitled "to the same broad discovery as any other litigant seeking to execute on a judgment under Rule 69(a)").[18] It is also inconsistent with this Court's precedent recognizing that the FSIA applies to post-judgment proceedings without distinguishing between execution immunity and discovery in aid of execution. *Af-Cap*, 475 F.3d at 1095-96.

  *Finally*, while post-judgment discovery in aid of execution is authorized under Federal Rule 69, the Rule makes clear that "a federal statute

---

[18]     The Republic's petition for a writ of certiorari to the Supreme Court in *EM*, filed January 8, 2013, remains pending.

governs to the extent it applies," Fed. R. Civ. P. 69(a)(1) – here, the FSIA. It is equally obvious that under Federal Rule 26, discovery must be "*relevant to any party's claim or defense*," which in this context means information concerning assets of the Republic subject to execution under the FSIA, *not* property potentially subject to execution pursuant to the laws of *some other country*. *See* Fed. R. Civ. P. 26(b)(1) (emphasis added). The Federal Rules provide no support whatsoever for a third-party discovery rule that ignores the substantive law; to the contrary, as the Magistrate Judge herself observed, post-judgment discovery must be "constrained principally in that it must be calculated to assist in collecting on a judgment." Discovery Order at 1 (ER at 4). Here, the FSIA provides the comprehensive, substantive framework in which "circumspect" discovery concerning sovereign assets may be sought – regardless of whom is served with discovery, or what form the discovery takes. The Magistrate Judge and the district court erred in holding otherwise.

**C.    The District Court Erred In Holding That The FSIA Does Not Limit Discovery Regarding Assets Located Outside Of The United States**

As discussed above, the FSIA provides the sole basis of jurisdiction over sovereigns, and is the exclusive source for post-judgment execution against foreign states. *See Alpha Therapeutic Corp. v. Nippon Hoso Kyokai*, 199 F.3d 1078, 1083 (9th Cir. 1999); *In re Estate of Ferdinand Marcos Human Rights Litig.*,

94 F.3d 539, 545 (9th Cir. 1996); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461

U.S. 480, 493, 496 (1983).

      The text of the FSIA shows that Congress limited the FSIA's post-

judgment provisions – which include post-judgment discovery in aid of

execution – to the enforcement of judgments *within* the United States.  *See* Fed. R.

Civ. P. 69(a); H.R. Rep. No. 94-1487, at 28 (1976), *reprinted in* 1976

U.S.C.C.A.N. 6604, 6627 ("The term 'attachment in aid of execution' [in §

1610(a)] is intended to include attachments, garnishments, and *supplemental*

*proceedings* available under applicable Federal or State law *to obtain satisfaction*

*of a judgment*.  *See* Rule 69, Fed. R. Civ. P.") (emphases added); *see also EM*, 695

F.3d at 208 (finding that district court's "power to conduct *supplementary*

*proceedings*" allowed it to enter a similar post judgment discovery order)

(emphasis added).  In fact, the provisions explicitly mention the United States and

no other location.  *See* 28 U.S.C. § 1609 ("[T]he property *in the United States* of a

foreign state shall be immune from attachment arrest and execution except as

provided in sections 1610 and 1611") (emphasis added); *id.* § 1610 ("The property

*in the United States* of a foreign state . . . used for a commercial activity *in the*

*United States*, shall not be immune from attachment in aid of execution, or from

execution, upon a judgment entered by a court of the United States" if one or more

provided exceptions apply) (emphases added); s*ee also Autotech Techs. LP v.*

*Integral Research & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007) ("[T]he FSIA authorizes execution only against properties in the United States.").

Accordingly, the Orders, which reject the principle that the FSIA limits post-judgment discovery in aid of execution to assets located within the United States, disrupt the "strong presumption that enactments of Congress do not apply extraterritorially." *Keller Found./Case Found. v. Tracy*, 696 F.3d 835, 844 (9th Cir. 2012). Indeed, the FSIA's text provides a clear indication that, as Congress intended, the "object of the [FSIA's] solicitude . . . is fundamentally domestic." *Id.* at 845; *see also Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2884 (2010). This presumption applies *a fortiori* here, as the FSIA is a jurisdictional statute. *See, e.g.*, *Alpha Therapeutic Corp.*, 199 F.3d at 1083. Like the statutes at issue in *Keller* and *Morrison*, the FSIA contains no indication whatsoever, much less a clear one, that Congress intended it to apply extraterritorially, *i.e.*, to empower U.S. courts to act as a clearinghouse for discovery of assets outside the United States or discovery that might be used in asset execution proceedings in a foreign jurisdiction.

Thus, as here, when a judgment creditor pursues judgment enforcement against a foreign sovereign, Section 1610 limits a court's authority to order discovery in aid of execution to that which is plausibly subject to attachment and execution, *i.e.*, property of a foreign sovereign located in the United States and

34

used for a commercial activity here. *See Af-Cap*, 475 F.3d at 1096; *Rubin*, 637 F.3d at 799; *see also Raccoon Recovery*, 244 F. Supp. 2d at 1142 (denying discovery against foreign instrumentality where underlying charging order was aimed at assets outside the United States because "it would defeat the protections afforded under [the] FSIA to require . . . burdensome discovery"). There is thus no basis to allow NML to pursue, through discovery, a broad inquiry into sovereign assets and sovereign decision-making concerning deployment of energy resources outside of the United States. *See Autotech*, 499 F.3d at 750 ("The FSIA did not purport to authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world. We would need some hint from Congress before we felt justified in adopting such a breathtaking assertion of extraterritorial jurisdiction.").

   The Orders here, which allow discovery of purported Republic assets located worldwide, are thus plainly at odds with the Court's "strong presumption" against the extraterritorial application of statutes.

## CONCLUSION

For the foregoing reasons, the Court should reverse and vacate the

Orders.


Dated:  March 22, 2013          SHEPPARD, MULLIN, RICHTER & HAMPTON
                                LLP


                          By    _____
                                        /s/ Neil A.F. Popović
                                      Neil A.F. Popović
                                      Attorneys for *Defendant*
                                THE REPUBLIC OF ARGENTINA


                          CLEARY GOTTLIEB STEEN & HAMILTON LLP
                            Jonathan I. Blackman
                            Carmine D. Boccuzzi
                            Sara A. Sanchez
                            Michael M. Brennan
                            Attorneys for *Defendant*
                            **THE REPUBLIC OF ARGENTINA**

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Defendant-Appellant Republic of Argentina submits this Notice of Related Cases.  At this time, Defendant-Appellant is unaware of any pending cases that:

(a)    arise out of the same or consolidated cases in the district court or agency;

(b)    are case previously heard in this Court which concern the case being briefed;

(c)    raise the same or closely related issues; or

(d)    involve the same transaction or event.

Dated:  March 26, 2013          SHEPPARD, MULLIN, RICHTER & HAMPTON
                                LLP


                          By    _____/s/ Neil A.F. Popović_____
                                      Neil A.F. Popović
                                Attorneys for *Defendant-Appellant*
                                THE REPUBLIC OF ARGENTINA


                          CLEARY GOTTLIEB STEEN & HAMILTON LLP
                            Jonathan I. Blackman
                            Carmine D. Boccuzzi
                            Sara A. Sanchez
                            Michael M. Brennan
                            Attorneys for *Defendant*
                            **THE REPUBLIC OF ARGENTINA**

**Form 6.    Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains <u>8,583</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☐ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* _____ *(state font size and name of type style)* _____, *or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ .

Signature | /s/ Neil A.F. Popović

Attorney for | Republic of Argentina

Date | March 22, 2013

| 9th Circuit Case Number(s) | No. 12-17738 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) March 22, 2013 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    /s/ Allen E. Rose

*************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)